**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| (1) DANIEL LUCERO,<br>on behalf of plaintiff and a class,<br><br>            Plaintiff,<br><br>v.<br><br>(1) LOVE, BEAL & NIXON, P.C.;<br>(2) MIDLAND CREDIT MANAGEMENT, INC.;<br>(3) MIDLAND FUNDING LLC; and<br>(4) ENCORE CAPITAL GROUP, INC.,<br>formerly MCM CAPITAL GROUP, INC.,<br><br>            Defendants. | 12-CV-659-GKF-TLW<br><br>Judge Frizzell<br><br>Magistrate Judge Wilson |

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1. Plaintiff Daniel Lucero brings this action to secure redress against unlawful collection practices engaged in by defendants Love, Beal & Nixon, P.C. ("LBN"); Midland Credit Management, Inc. ("MCM"); Midland Funding LLC ("MFLLC"); and Encore Capital Group, Inc., formerly known as MCM Capital Group, Inc. ("Encore"). Plaintiff alleges violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA").

### JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. §§1331, 1337 and 15 U.S.C. §1692k (FDCPA).

3. Venue in this District is proper because defendants' collection activities were conducted in this District and plaintiff received correspondence from defendants in this District.

### PARTIES

#### Plaintiff

4. Plaintiff Daniel Lucero is a resident of Tulsa, Oklahoma.

1

**Defendants**

**Love, Beal & Nixon, P.C.**

5.  Defendant Love, Beal & Nixon, P.C. ("LBN") is a law firm organized as a professional corporation with offices at 6621 N. Meridian Avenue, Oklahoma City, OK 73116.

6.  Defendant LBN describes its services on its Web site as follows (http://www.lbncollect.com/about_us.htm):

> . . . We have a strong commitment to prompt, diligent and detailed creditor representation and are proud to offer our clients service throughout the entire state of Oklahoma.
>
> We offer collections services, bankruptcy representation for creditors, [and] replevin (judicial recovery of collateral) services.

7.  Among the clients for which LBN regularly performs collection work in Oklahoma are defendants MCM and MFLLC.

8.  Defendant LBN uses the mails and telephone system to conduct its business.

9.  Defendant LBN is a "debt collector" as defined in the FDCPA.

**MCM**

10. Defendant MCM is a Kansas corporation with its principal place of business located at 8875 Aero Drive, Suite 200, San Diego, CA 92123.  MCM does business in Oklahoma.  Its registered agent and office is Corporation Service Company, 115 S.W. 89th Street, Oklahoma City, OK 73139.

11. Defendant MCM is a collection agency.  It both owns debts and acts as a collection agency for MFLLC and related entities, described below.

12. Defendant MCM uses the mails and telephone system to conduct its business.

13. Defendant MCM is a "debt collector" as defined in the FDCPA.

**MFLLC**

14. Defendant Midland Funding LLC ("MFLLC") is a limited liability

2

company organized under Delaware law with its principal place of business at 8875 Aero Drive, Suite 200, San Diego, CA 92123. It does or transacts business in Oklahoma.

15. MFLLC is in the business of taking title or claiming to take title to charged-off debts allegedly owed by consumers and originally owed to others.

16. MFLLC then seeks to enforce the debts against the consumers through lawsuits.

17. The mails and telephone system are used in connection with the prosecution of the MFLLC lawsuits.

18. Defendant MFLLC is a "debt collector" as defined in the FDCPA.

**Encore**

19. MCM and MFLLC are under common ownership. Both are direct or indirect subsidiaries of Encore, a publicly traded Delaware corporation, with offices at 8875 Aero Drive, Suite 200, San Diego, CA 92123.

20. Encore has stated in its filings with the Securities & Exchange Commission that "We are a leader in consumer debt buying and recovery. We purchase portfolios of defaulted consumer receivables at deep discounts to face value and use a variety of operational channels to maximize our collections from these portfolios" (Form 10-K filed by Encore with the SEC for year ending Dec. 31, 2010, original page 1).

21. Encore (a) secures funds from investors and lenders for the purpose of purchasing the debts to which MCM and MFLLC take title, and (b) devises the collection strategies used by the other defendants.

22. On March 10, 2005, Encore stated to public investors that it is a "50 year old purchaser and manager of consumer receivables portfolios" (Form 8-K filed by Encore with the SEC on March 10, 2005).

23. Encore states that it is a "purchaser and manager of charged-off consumer receivables portfolios" – i.e., bad consumer debts." (Form 8-K filed by Encore with the SEC on

March 3, 2005, including Exhibit 99.1 thereto).

24. Encore "acquires these portfolios at deep discounts from their face values." A June 9, 2011 filing with the SEC (Form 8K, Exhibit 99.1) reflecting a presentation at an "Investor Day" by Brandon Black, President and Chief Executive Officer, Paul Grinberg, EVP and Chief Financial Officer, Amy Anuk, vice president for Business Development, and Manu Rikhye, Managing Director of India Operations, stated that Encore had invested $1.9 billion to acquire receivables with a face value of $58 billion since its inception, or about 3.3 cents on the dollar, and had acquired 34 million consumer accounts since its inception.

25. The same document states that legal collections resulted in revenue of $266.8 million in 2010 and $88.5 million during the first quarter of 2011.

26. During 2010, total collections by Encore amounted to $604.6 million (Form 10-K for year ending Dec, 31, 2010, original page 25), so that the legal collections were over 44% of the total.

27. Most of the debts that Encore, MFLLC, and MCM seek to collect are credit cards originally issued by banks. For example, during 2010, Encore purchased credit card receivables with a face value of $341,910,000 out of a total of $361,957,000 of all receivables, or more than 94% (Encore Capital Form 10-K filed with the Securities & Exchange Commission for year ending Dec. 31, 2010, original page 25).

28. Encore devises the "collection strategies" used by its subsidiaries. Form 10-K filed by Encore with the SEC for the year ending December 31, 2010, original p. 6, states, under "Collection Approach," that "We expand and build upon the insight developed during our purchase process when developing our account collection strategies for portfolios we have acquired. Our proprietary consumer-level collectability analysis is the primary determinant of whether an account is actively serviced post-purchase. Throughout our ownership period, we periodically refine this analysis to help determine the most effective collection strategy to pursue for each account."

29. On Oct. 28, 2004, Encore CEO Gregory stated in an earnings conference call:

> . . . Our board also elected Brandon Black, President and Chief Operating Officer of the Company. Brandon has been Executive Vice President and Chief Operating officer for the past 5 years and has done a superb job. Brandon is the architect of many of the analytical procedures and collection processes that distinguish Encore's approach to the business. His intelligence, analytical ability and drive for success have been instrumental in Encore's success and in his new role will be key factors as we continue to build the business. . . .
>
> On the purchasing front, we invested $21 million in new portfolios during the quarter, up 10 percent from the prior year's quarters purchases of $19 million. Our average purchase price for the quarter was 2.91 percent which was down slightly from last year's 3.02 percent. This was not as much as we had hoped to invest but appropriate given the high prices for much of the available supply. Year-to-date, our purchases have been $57 million or about $7 million less than last year's first 3 quarters. For the year-to-date, approximately 48 percent of our purchases have been non-credit card, compared with just 6 percent last year for the same period. We will have more to say about purchasing in a minute but the purchasing discipline and analytical approach we've always taken are more important now than ever before. . . .

30. Encore is responsible for determining which debts to purchase and at what price. In an earnings conference call conducted by executives of Encore on Aug. 3, 2004, Encore CEO Gregory stated:

> Encore enjoyed another good quarter. Our collections, revenue and net income all increased. In addition, we closed a terrific new loan with J.P. Morgan Chase that dramatically lowers our cost of borrowing, increases our flexibility, and should result in better financial returns for Encore. Finally, just after the end of the quarter, we closed the biggest purchase we've ever made on terms we considered quite attractive. We are very excited about our industry and its future, but most importantly, Encore's ability to excel in the future.

31. On Aug. 3, 2004, Encore CEO Gregory stated in another such call:

> We believe our business model is especially well-suited to this changing environment. Specifically, our business model emphasizes customer-level rather than portfolio-level analytics, innovative and flexible collection processes and conservative accounting.
>
> The keystone to everything we do is customer-level analytics -- understanding the individual customer and his changing ability to pay. Prior to purchase and throughout our ownership, we analyze the individual customer's ability and willingness to pay. We are always asking the same question -- can this particular customer pay us all or some of what he owes now? By focusing on the customer and information about him, we are able to move comfortably across various asset types as well as the portfolio ages or time since charge-off. In this process, a score

>is generated for every single account we own and the score is refreshed quarterly to ensure that it maintains its accuracy.
>
>The second major aspect of our business model is our use of innovative collection strategies that are driven by the underlying collectibility score of each customer. In other words,to fully benefit from the new information we are generating about the individual customers, we have to be able to apply different collection strategies as appropriate, or at least be able to apply the traditional approaches in new ways that will be more effective.
>
>We now have eight unique revenue channels that each contribute more than $1 million per month in collections, including direct mail, balance transfer, external legal, and our recently developed agency outsourcing strategy.

32.     Because of its intimate involvement in collection activities, Encore is a debt collector as defined in the FDCPA. Encore has been held to be responsible for debt collection activities conducted by MFLLC and MCM on prior occasions.

## FACTS RELATING TO PLAINTIFF

33.     In August 2012, defendant LBN sent plaintiff the letter attached as Exhibit A.

34.     Exhibit A seeks to collect a credit card debt that had been incurred for personal, family, or household purposes and reduced to judgment in an action brought by MCM in 2004.

35.     Plaintiff, whose sole source of income is Social Security and whose only real estate is his home, had difficulty paying all of his debts on a fixed income and defaulted on the credit card.

36.     Exhibit A is a form letter regularly used by LBN in cases where a judgment has been obtained and the consumer owns real estate.

37.     LBN has established judgment liens against more than 200 consumers in favor of MCM and MFLLC in Tulsa County alone.

38.     On information and belief, LBN sent a letter in the form represented by Exhibit A to each of these consumers.

39.     On information and belief, LBN sent a letter in the form represented by

Exhibit A to each consumer against whom it has established a judgment lien, whether on behalf of MCM or MFLLC or someone else.

40.     Exhibit A states that "We have recently established a judgment lien in regards to that judgment. [¶] This judgment lien will attach to any and all real property you own or property you acquire in the future in the county where the judgment lien has been established. In addition, it will attach to any property you attempt to purchase in the future. [¶] We encourage you to contact our office to make arrangements for satisfaction of this obligation.  Once the judgment has been satisfied, a Release and Satisfaction of Judgment will be filed."

41.     Exhibit A is materially misleading, and omits to state matters necessary to prevent consumers from being misled by the statements made in Exhibit A.

42.     Although a judgment lien may attach to a residence, Oklahoma's homestead exemption prevents any forced sale of the home as long as the consumer lives there.

43.     By using legalistic terms such as "attach," and by not disclosing the existence of an exemption which will normally protect the consumer against any immediate consequence of the judgment lien, Exhibit A seeks to intimidate  consumers into believing that payment is necessary to protect their home.

44.     Furthermore, the lien does not attach to property which the consumer attempts to purchase, but only property owned by the consumer.

45.     The only real estate that plaintiff owns is his home.

46.     Most consumers from whom defendants seek to collect debts do not own real estate other than their homes.

47.     MCM and MFLLC have the right to obtain copies of form letters which LBN sends on their accounts.

48.     MCM, MFLLC, and Encore are liable when LBN sends Exhibit A to one of their debtors.

## COUNT I – FDCPA

49. Plaintiff incorporates paragraphs 1-46.

50. Defendants engaged in deceptive collection practices, in violation of 15 U.S.C. §§1692e, 1692e(2), 1692e(5), and 1692e(10), by sending letters in the form of Exhibit A.

51. Collection letters are misleading if they refer to harsh creditor remedies without disclosing material limitations and exemptions on those remedies which are likely to apply are misleading.

52. Section 1692e provides:

**§ 1692e. False or misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(2) The false representation of–**

   **(A) the character, amount, or legal status of any debt; . . .**

**(5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .**

**(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

## CLASS ALLEGATIONS

53. Plaintiff brings this action on behalf of two classes, designated LBN and Midland, pursuant to Fed. R.Civ.P. 23(a) and (b)(3).

54. The LBN class consists of (a) all natural persons with Oklahoma addresses (b) to whom LBN sent a letter in the form represented by Exhibit A (whether on behalf of MCM, MFLLC, or someone else) (c) which letter was sent to the same address as the person's real estate (d) on or after November 30, 2011, and (d) on or before December 20, 2012.

55. The Midland class consists of (a) all natural persons with Oklahoma addresses (b) to whom LBN sent a letter in the form represented by Exhibit A (c) seeking to

collect a debt allegedly owed to MCM or MFLLC, (d) which letter was sent to the same address as the person's real estate (e) on or after November 30, 2011, and (d) on or before December 20, 2012.

56. The class members are so numerous that joinder is impracticable. On information and belief, there are over 100 members of each class.

57. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether <u>Exhibit A</u> violates the FDCPA.

58. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

59. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

60. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible, and in any event are not sufficient to prevent defendants from continuing their violations of the law. The essence of the violation is to mislead debtors, and most debtors will not realize that their rights are violated.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class members and against defendants for:

(1) Statutory damages;

(2) Attorney's fees, litigation expenses and costs of suit;

(3) Such other or further relief as the Court deems proper.

s/ Victor R. Wandres  
Victor R. Wandres

Victor R. Wandres  
PARAMOUNT LAW --  
    CONSUMER PROTECTION ATTORNEYS

115 West 3rd Street, Fourth Floor
Wright Building
Tulsa, OK 74103
(800) 350-2707
(918) 200-9272
(918) 895-9774 (Fax)


pro hac vice to be applied for


Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Catherine A. Ceko
EDELMAN, COMBS, LATTURNER
& GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## **NOTICE OF ASSIGNMENT**

Please be advised that all rights relating to attorney's fees have been assigned to counsel.

s/ Victor R. Wandres
Victor R. Wandres

**CERTIFICATE OF SERVICE**

     I, Victor R. Wandres, hereby certify that on November 30, 2012, a true and accurate copy of the foregoing document was filed via the Court's CM/ECF system. The foregoing document will be served by hand delivery, via process server, upon the following parties:

Love, Beal & Nixon, P.C.
c/o Registered Agent, William L. Nixon, Jr
6621 North Meridian Avenue
Oklahoma City, OK 73116

Midland Credit Management, Inc.
c/o Registered Agent, Corporation Service Company
115 S.W. 89th Street
Oklahoma City, OK 73139

Midland Funding, LLC
c/o Registered Agent, Corporation Service Company
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

Encore Capital Group, Inc.
c/o Registered Agent,
2710 Gateway Oaks Drive, Suite 150N
Sacramento, CA 95833

                                                          s/ Victor R. Wandres
                                                          Victor R. Wandres

# EXHIBIT A

# LOVE, BEAL & NIXON, P.C.



*Attorneys at Law*
Claude E. Love (1915-1990)
David O. Beal
William L. Nixon, Jr.
J. Michael Morrison
Shanda McKenney
Harley L. Abrahamsen
Jenifer A. Gani
Tracy Cotts Reed
Keith A. Daniels

Susie Rodzon, Operations Administrator
James A. Belcher, Collection Supervisor
Troy M. Beat, Collection Supervisor
6621 North Meridian
P.O. Box 32738
Oklahoma City, Oklahoma 73123
Toll Free: (888) 557-5053
Telephone: (405) 720-0466
Fax No.: (405) 773-2602

**REDACTED**

Daniel Lucero



Re:   Our Client:   Midland Credit Management
      Case No:      CS-04-1476
      In the District of TULSA County
      Our File No: 03-33430-0

Dear Daniel Lucero:

As you were previously advised a judgment has been awarded in favor of Midland Credit Management in regards to the above referenced matter. We have recently established a judgment lien in regards to that judgment.

This judgment lien will attach to any and all real property you own or property you acquire in the future in the county where the judgment lien has been established. In addition, it will attach to any property you attempt to purchase in the future.

We encourage you to contact our office to make arrangements for satisfaction of this obligation. Once the judgment has been satisfied, a Release and Satisfaction of Judgment will be filed.

Sincerely,

Love, Beal & Nixon, P.C.

**THIS IS A COMMUNICATION FROM A DEBT COLLECTOR.**

D   Lucero

in

p B S