**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| Daniel Lucero, <br> on behalf of plaintiff and a class | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | |
| vs. | ) <br> ) <br> ) | 12-CV-659-GKF-TLW <br><br> Judge Frizzell |
| (1) LOVE, BEAL & NIXON, P.C.; <br> (2) MIDLAND CREDIT MANAGEMENT, INC.; <br> (3) MIDLAND FUNDING LLC; and <br> (4) ENCORE CAPITAL GROUP, INC., <br> formerly MCM CAPITAL GROUP, INC., | ) <br> ) <br> ) <br> ) <br> ) <br> ) | Magistrate Judge Wilson |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN SUPPORT**
**OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Daniel Lucero ("Plaintiff"), individually and as representative of a Class of similarly situated persons, by Class Counsel, respectfully submits the following Memorandum in Support of Final Approval of the Class Action Settlement Agreement ("Agreement") which this Court preliminarily approved on April 11, 2014.

A settlement fund of $115,000 will be created. The $115,000 Class Settlement Fund shall include plaintiff's award ($5,000), settlement administrative costs and notice costs for the class ($13,258.00), and Class Counsel's attorneys' fees and costs of $34,500.00, subject to approval from this Court. Every class member who is entitled to take from the fund will receive a pro rata share of the remaining settlement fund of $62,242.00. Seven Hundred and Seventy Eight (778) Claim forms were timely submitted. Nine (9) claim forms were submitted after the July 11, 2014 deadline to submit claim forms. If only timely and valid claim forms are considered, each class member will

1

receive approximately $80.00. If all claim forms received up through the date of filing of this memorandum are considered, each class member will receive $78.98.

The Court is advised that subsequent to the entry of the preliminary approval order and findings, notice of the settlement of this action was mailed to 5,512 individuals identified as Class members, on May 12, 2014. Following the mailing, 199 notices were returned as undeliverable with no forwarding address available, and 360 notices were returned and re-mailed to a forwarding address. There were four timely requests for exclusion, zero objections submitted by the class members, and one ambiguous letter submitted by a class member. Under the Agreement, Class members had sixty (60) days from the date of the notice in which to submit a claim, object to, or exclude themselves from the Settlement.

**I.      OVERVIEW OF THE LITIGATION PRECEDING SETTLEMENT**

Plaintiff filed a class action complaint in the United States District Court for the Northern District of Oklahoma, entitled *Daniel Lucero v. Love, Beal & Nixon, et al.12-cv-659-GKF-TLW* (the "Litigation" or the "Action"). Plaintiff asserted a claim pursuant to the Fair Debt Collection Practices Act ("FDCPA") in connection with the conduct of Defendants. Specifically, Plaintiff claimed that Defendants violated the FDCPA 15 U.S.C. §1692 *et seq.* by sending a collection letter between November 30, 2011 and December 20, 2012, which letter referred to harsh creditor remedies without disclosing material limitations and exemptions on those remedies which are likely to apply.

The parties successfully reached an agreement to settle the case on a class-wide basis. The parties' agreement was preliminarily approved by the Court on April 11, 2014. Defendants served

the notice required by the Class Action Fairness Act ("CAFA") on May 12, 2014. As demonstrated below, the parties' Agreement is now ripe for this Court's consideration and final approval.[1]

## II.   THE ADMINISTRATION OF THIS CLASS ACTION SETTLEMENT.

### A.   The Preliminary Approval Order.

On April 11, 2014, this Court granted preliminary approval of the Agreement reached between the parties. In the Preliminary Approval Order ("Order"), the Court specifically found that the proposed terms of the settlement satisfied all of the elements of Federal Rule of Civil Procedure 23(a) and 23(b)(3). The Order further established a procedural framework for the final approval of the settlement. The Order required the parties to cause notice to be mailed to the members of the Class that was conditionally certified by the Court (collectively "the Class"), set deadlines and procedures for requests for exclusion and objections to the settlement, and set a August 14, 2014, final approval hearing.

For purposes of settlement, the Court conditionally certified the following class:

(a) all natural persons with Oklahoma addresses (b) to whom LBN sent a letter in the form represented by Exhibit A (whether on behalf of MCM, MFLLC, or someone else) (c) which letter was sent to the same address as the person's real estate (d) on or after November 30, 2011, and (d) on or before December 20, 2012.

---

[1] Because the CAFA notice was not filed until June 6, 2014, and from June 9, 2014 through June 15, 2014, the CAFA notices were received by the thirty-two state attorneys general and the U.S. Attorney General, this Court should defer entry of the final approval order until September 16, 2014.

**B.     The Sending of Class Notice and Claim Forms.**

The Court is advised that subsequent to the entry of the Order, notice of the settlement of this action was mailed to 5,512 individuals identified as members of the Class on May 12, 2014. Affidavit of Kristin L. Dahl, attached as <u>Exhibit A</u>. The U.S. Post Office returned 199 of the notices as "undeliverable" with no forwarding address, and 360 notices were returned and re-mailed to forwarding addresses by the U.S. Postal Service. There were four timely requests for exclusion, zero objections submitted by the class members, and one ambiguous letter submitted by the class members, which Class Counsel requests the Court to treat as a timely claim form.

**C.     The Benefits Provided by the Settlement.**

This Court has previously considered the terms of the settlement in granting preliminary approval of the Agreement. The terms of the Agreement are as follows:

(a)     Relief to Plaintiff – Plaintiff, Daniel Lucero, will receive $5,000.00 out of the Class Fund for his actual and statutory damages and as an incentive award for being the class representative. Further, in exchange for the dismissal of the Defendants Midland Credit Management, Inc., Midland Funding, LLC, and Encore Capital Group, Inc. ("Midland Defendants"), the Midland Defendants agreed to pay named Plaintiff Daniel Lucero the amount of five hundred dollars ($500). In 2004, Defendant Midland Credit obtained a judgment against Plaintiff in CS-2004-1476, Tulsa County District Court, which has not been collected. Because the underlying indebtedness remains in dispute and the collection of the judgment is uncertain, and to avoid incurring additional costs and expenses in attempting to collect on the judgment, Midland agrees to accept $500 from Plaintiff, to be offset from the amount the Midland Defendants will pay to Plaintiff, in full satisfaction of the judgment. LBN shall file a release and satisfaction of judgment

in CS-2004-1476 upon approval of the Court of the class.

      (b)      Relief to members of the Classes – Defendant LBN shall pay $115,000 into a Class Settlement Fund. The $115,000 Class Settlement Fund shall include plaintiff's $5,000.00 award; settlement administrative costs and notice costs for the class ($13,258.00, *see* Exhibit A); and plaintiff's attorneys' fees and costs, subject to approval from this Court, of $34,500.00, which is 30% of the Class Settlement Fund. The remainder of the Class Settlement Fund, approximately $62,242.00, will be distributed on a *pro rata* basis among the class members who the Court deems to have submitted timely claim forms.

      (c)      Cy Pres – Any amount remaining in the Class Fund after all class checks are void will be distributed to the Legal Aid Services of Oklahoma

      (d)      Attorneys' fees – Subject to Court approval, Class Counsel will receive attorney fees and costs of $34,500.00, which is 30% of the Settlement Fund, after the costs of administration are subtracted. Defendants agree not to object to a fee petition that requests up to this amount.

      (e)      Reasonable Settlement Administrator fees and expenses of $13,258.00 will be paid out of the Settlement Fund prior to distribution, which are the costs associated with the mailing of the Class Notice and the costs of mailing settlement checks to class members.

      **D.**      **Ambiguous Letters from Class Members.**

Class counsel has received one ambiguous letter from a class member. Exhibit B. Class counsel wrote that one class member requesting that she clarify her intentions regarding the settlement. Exhibit C. Class counsel received a response from the class member on August 5, 2014, clarifying that she would like to participate in the Settlement. Exhibit D.

## III. THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT.

The settlement satisfies all the requirements of Rule 23.

### A. Rule 23(a)(1) - The Settlement Class Is So Numerous That Joinder Of All Members Is Impracticable.

Notice was sent to 5,512 persons who were identified as Class members. The Tenth Circuit has adopted "no set formula to determine if the class is so numerous that it should be so certified." *Colorado Cross-Disability Coalition v. Abercrombie & Fitch Stores, Inc.*, No. 09-cv-02757, 2012 U.S. Dist. LEXIS 55680, *6 (Dist. Ct. Col. April 20, 2012), *quoting Rex v. Owens ex rel. State of Okla.*, 585 F.2d 432, 436 (10th Cir. 1978). Whether or not numerosity is met is a fact-specific inquiry left up to the broad discretion of the district court. *Colorado Cross-Disability Coalition*, at *7-8 (Dist. Ct. Col. April 20, 2012). The number of class members in this case, however, plainly satisfies the numerosity requirement of Rule 23(a)(1) even without a strict, numerical test. *Circle v. Jim Walter Homes, Inc.*, 535 F.2d 583 (10th Cir. 1976)(finding a class out of 358 individuals who executed challenged negotiable notes).

### B. Rule 23(a)(2) - The Claims Of The Settlement Class Arise From Common Questions Of Law And Fact.

"The commonality requirement is met if plaintiffs' grievances share a common question of law or fact." *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999)(Internal quotation omitted). Where there is a common question of law, some variation in fact patterns among the class members will not prevent class certification. *D.G. ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010). Rule 23(a)(2) requires only that the class members share at least one question of fact or law in common. *Kreuzfeld A.G. v. Carnehammer*, 138 F.R.D. 594, 599 (S.D.Fla. 1991)

(the issue of commonality "turns on whether there exists at least one issue affecting all or a significant number of proposed class members").

In the present case, the claims arose from one common question: Did Defendants violate the FDCPA by sending the form letter at issue? This common question satisfies Rule 23(a)(2).

### C. Rule 23(a)(3) - Named Plaintiff's Claims are Typical Of the Claims Of The Settlement Class.

Fed.R.Civ.P. 23(a)(3) requires that the claims of a named plaintiff be typical of the claims of the class. "A named plaintiff's claim is 'typical' when it arises out of the same event, practice or course of conduct of the defendant, and is based on the same legal theory on which the putative class claims are predicated." *Frankhouser v. XTO Energy, Inc.*, Case No. CIV-07-798-L, 2010 U.S. Dist. LEXIS 133345, *12 (W.D.Okla. Dec. 16, 2010). Typicality does not require that the interests and claims of the class be identical. *D.G. ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198-99 (10th Cir. 2010).

In the instant case, typicality is inherent in the class definition. By definition, the members of the class were subjected to the same practices as the plaintiff. Plaintiff's claims and the claims of the members of the class all turn on the legality of defendants' practice of sending form letters represented by <u>Exhibit A</u> to the Complaint. Therefore, typicality is met.

### D. Rule 23(a)(4) - Plaintiff and Class Counsel Will Fairly And Adequately Protect The Interests Of The Settlement Class.

The determination that the "representative parties will fairly and adequately protect the interests of the class" as required by Rule 23(a)(4) involve two considerations: (1) whether the Plaintiff's attorneys are properly qualified and experienced to conduct the litigation; and (2) whether

the Plaintiff has any interests antagonistic to the class. *General Tel. Co. v. Falcon*, 102 S.Ct. 2364, 2370, n.13 (1982)

As set forth in Class Counsel's Declaration, Class Counsel of Edelman, Combs, Latturner & Goodwin ("ECLG") is experienced in class action litigation. *See* Exhibit E and its Appendices. In addition, Plaintiff has no interests in conflict with the class. Therefore, the named Plaintiff and Class Counsel satisfy the adequacy of representation requirement of Rule 23(a)(4).

### E.     The Settlement Class is Appropriate Pursuant to Rule 23(b)(3).

Class certification is appropriate under Rule 23(b)(3) where: (1) common questions of law or fact predominate over individual questions; and where (2) a class action represents a superior method for the fair and efficient adjudication of the controversy. Both of these requirements are satisfied in the present case.

#### 1.     Common questions predominate over individual issues.

In order for common questions of law or fact to predominate over individual issues for purposes of Rule 23(b)(3), common issues must constitute a significant part of the individual cases. *Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, 133 S.Ct. 1184, 1191 (2013). Courts "generally focus on the liability issues in deciding whether the predominance requirement is met, and if the liability issue is common to the Class, common questions are held to predominate." *In re Alexander Grant & Co. Litigation*, 110 F.R.D. 528, 534 (S.D.Fla. 1986); *see also Dura-Built Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 89 (S.D.N.Y. 1981). In the present case, a common issue relating to the lawfulness of sending the form letter attached as Exhibit A to the Complaint predominates over individual issues, if any, as required by Rule 23(b)(3).

8

### 2. A Class Action is Superior to Other Methods of Resolving This Matter.

For many of the reasons set forth above, a class action is the superior method to resolve the claims presented in this action. The Rule 23(b)(3) predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Am. Chem. Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997). Further, in *Phillips Petroleum Company v. Shutts*, 472 U.S. 797, 809, 105 S.Ct. 2965 (1985), the Supreme Court recognized that in cases where the class members' claims are too many or too small to litigate on an individual basis, the Court should certify the case as a class action under Rule 23(b)(3).

Given the large number of individual lawsuits that would be required if a class were not certified, a class action presents a superior method to fairly and efficiently adjudicate all of the claims of the class in this case, within the meaning of Rule 23(b)(3). To the extent that any class members wished to pursue any such individual claim, they were free to opt-out of the settlement under Rule 23(b)(3). In the present case, only four class members, or 0.07% of the class, elected to exclude themselves from the settlement.

### F. The Standard For Granting Final Approval To The Class Action Settlement.

In *Amchem Productions, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231 (1997), the United States Supreme Court explained that, before approving a class action settlement, the District Court must first be satisfied that the elements of Rule 23(a) and 23(b) have been met. *Id.* at 621, 117 S.Ct. at 2248.

Once the Court has determined that the requirements of Rule 23(a) and 23(b) have been met, the Court must then determine whether Rule 23(e) has been satisfied by determining whether the

settlement is fair, reasonable, and adequate. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). The Court considers the following four factors in making this determination:

1. Whether the proposed settlement was fairly and honestly negotiated;

2. Whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

3. Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

4. The judgment of the parties that the settlement is fair and reasonable.

*Id.* The class action settlement in the present case satisfies each of the factors outlined in *Jones*.

As evidence of the lack of any collusion, and that the settlement was fairly and honestly negotiated, the settlement was negotiated at arms length over the course of several months by experienced counsel. Plaintiff filed his Complaint on November 30, 2012. The Parties first discussed settlement in April, 2013, and a full and complete settlement was not agreed upon until August 2013. Class counsel and Defense counsel engaged in much "back and forth" in coming to the settlement terms, and explored the issues underlying settlement thoroughly, before coming to an agreement. This satisfies the first *Jones* factor.

While Plaintiff believes he would have prevailed at trial on the merits, there are risks associated with further litigation. This not a standard FDCPA "letter" case, as the violation - - not explaining possible exemptions to a creditor remedy - - is more subtle than one, for example, where the creditor is misnamed or where the 15 U.S.C. §1692g notice is not given or is incomplete. In order to avoid the uncertainty presented by any litigation, the parties agreed to settle the dispute between them. The compromise provides that each class member will receive a pro rata share of the

Settlement Fund, which is $115,000 less Class Counsel's attorney's fees and costs discussed below of one-third of the Class Fund after costs of administration, or $34,500.00, and costs of administration of approximately $13,258.00, leaving a total Settlement Fund available to clients of approximately $62,242.00. Defendant LBN has agreed to pay beyond the maximum statutory damages recoverable by the Class against Defendant LBN under §1692k of the FDCPA. The arguable strength of the Class' claims compare favorably to the terms of the settlement and the settlement is warranted by the complexity, length and expense of continued litigation, satisfying the second and third of the *Jones* factors.

Finally, with respect to the fourth *Jones* factor, the above-described settlement amount to Plaintiff and Class counsel from the Class Fund compares favorably to the direct benefits to the Class. LBN is paying more than 1% of its net worth into the Class Fund, so the settlement actually gives class members more than they could receive from LBN if the case was litigated, a class was certified, and Plaintiff prevailed on the merits. Therefore, the Parties feel that the settlement is fair and reasonable.

**IV.** **THE ATTORNEY'S FEES AND COSTS ARE REASONABLE.**

Pursuant to the Agreement, Class Counsel requests approval of payment of attorney's fees and costs in the amount of $34,500.00, 30% of the Settlement Fund after the costs of administration are subtracted. As set forth in the Declaration of Daniel A. Edelman (Exhibit E) and Victor Wandres (Exhibit F), class counsel include experienced class action attorneys, all of whom contributed their skills and expended their resources in a coordinated effort that resulted in the settlement of this matter.

The Tenth Circuit has specifically authorized the district courts to award attorney's fees using the lodestar method or the percentage of fund method, showing a slight preference for the percentage of the fund method. *Gottleib v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994).

### A. The Common Fund Method

It has been well established in the Tenth Circuit, and elsewhere, that fee awards based upon a percentage of a recovery are fair and reflect what could have been contracted for in the marketplace. Consumer protection cases, where counsel is retained on a contingent fee basis, are certainly no different. When a representative party has created a "common fund" for, or has conferred a "substantial benefit" upon, an identifiable class, counsel for that party is entitled to an award of attorneys' fees from the fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988).

The Tenth Circuit has noted a typical fee range of 23.7% to 33.7%, *Brown*, 838 F.2d at 455 n. 2, and courts in this Circuit have awarded percentages similar to that requested by Class Counsel here. *Uselton v. Commercial Lovelace Motor Freight, Inc*, 9 F.3d 849, 853 (10th Cir. 1993)(29%); *Cimarron Pipeline Const., Inc. v. Nat'l Council On Compensation Ins.*, No. CIV 89–822–T, CIV 89–1186–T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) (33.3%); *In Re United Telecomm., Inc. Sec. Litig.*, No. CIV. A. 90–2251–0, 1994 WL 326007, at *2 (D. Kan. June 1, 1994) (33.3%).

The twelve factors to be considered when determining whether a certain percentage of the fund is reasonable are: (1) The time and labor required to litigate the matter; (2) the novelty and complicatedness of the issues, (3) the skill required to properly litigate the issues, (4) whether the attorney had to refuse other work to litigate the case, (5) the attorney's customary fee, (6) whether

12

the fee is fixed or contingent, (7) whether the client or case imposed time constraints, (8) the amount involved and results obtained, (9) the experience, reputation, and ability of the attorney, (10) whether the case was "undesirable," (11) the type of attorney client relationship and whether the relationship was longstanding, and (12) awards made in similar cases. *Brown*, 838 F.2d at 454-55, *citing Johnson v. Ga. Highway Express*, 488 F.2d 714, 717-719 (5th Cir. 1974).

Plaintiffs' counsel spent 138.6 hours litigating this matter up through the filing of this memorandum. The letter Plaintiff alleges violates the FDCPA is not of the typical variety, e.g. a letter not containing the 15 U.S.C. § 1692g notice, and therefore it was more novel and complicated than a "standard" FDCPA "letter" case. It takes considerable skill to litigate a class action lawsuit, as not only the underlying claim needs to be pursued but the attorneys also must have expertise in and be prepared to litigate the issue and merits of class certification. Class Counsel took this case on a contingent fee basis, and thus was faced with a significant risk of non-payment.

A fee request of thirty-percent (30%) of the Class Fund, or $34,500.00, is in the 23.7% to 33.7% range found acceptable in the Tenth Circuit. *Brown*, 838 F.2d at 455 n. 2. This is a fair and reasonable figure in consideration of the great benefit provided to the Class, which far exceeds the statutory maximum available (1% of its net worth) against Defendant LBN[2] if Plaintiff had prevailed at trial. Class Counsel has substantial experience in litigating consumer protection cases (*see* Exhibit E), and undertook a serious risk of nonpayment in taking on this litigation. The amount requested is reasonable in light of the results achieved.

---

[2] Exhibit A to the complaint was sent by defendant LBN. If this case had been litigated through to the merits, there would have been a lengthy, expensive debate among the parties over whether the other defendants' net worths should be considered in determining class recovery, and it is unclear which side would have prevailed. There is a substantial risk that Class members would have only received recovery based on LBN's net worth, in which case they are receiving a far greater benefit under this Settlement.

**B.     The Lodestar Method**

Class Counsel's fees and costs provided for in the Agreement are also appropriate under the lodestar method of calculation. The total time and expense incurred by ECLG is $24,215.00 and $615.32, respectively (*see* Appendix H to Exhibit E**)** and that of Wandres Law Firm, PLLC, d/b/a Paramount Law ("Wandres") is $12,732.50. (Exhibit F).

In computing the lodestar, the hourly billing rate applied is the hourly rate that is normally charged in the community where counsel practices, *i.e.*, the "market price." *See, e.g.*, *Blum*, 465 U.S. at 895; *McDonald v. Armontrout*, 860 F.2d 1456, 1459 (8th Cir. 1988) ("'in most cases, billing rates reflect market rates — they provide an efficient and fair short-cut for determining the market rate'"); *Spencer v. Comserv Corp.*, 1986 WL 15155, Fed.Sec.L.Rep. ¶93, 124, at 95, 532 (D. Minn. Dec. 30, 1986) ("[compensating a nationally recognized securities class action attorney at his hourly rate is entirely appropriate."); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161,167 (3rd Cir. 1973) ("The value of an attorney's time generally is reflected in his normal billing rate."). The hourly rates of Plaintiff's counsel and a detailed listing of Class Counsel's lodestar are set forth in Exhibit E and its Appendices and in Exhibit F.

This case was prosecuted by Class Counsel on a contingent fee basis with no assurance of any fee. In undertaking to prosecute this case on that basis, Plaintiff's counsel assumed a significant risk of nonpayment or underpayment. Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award, and it is one of the *Johnson* criteria to be determined in awarding fees. 488 F.2d 714, 717-719 (5th Cir. 1974).

Class Counsel filed a well researched complaint alleging claims for relief under federal law. Class Counsel engaged in the negotiations which resulted in the Agreement. As discussed above,

the settlement provides the maximum statutory damage award available under the FDCPA. The Claimants will each receive a *pro rata* share of the Settlement Fund, which after payment of attorney's fees and administrative expenses will be approximately $62,242.00. In light of the work performed in this matter, and the actual time and expenses incurred by ECLG of $24,215.00 and $615.32, respectively, *see* Appendix H to Exhibit E, and Wandres of $12,732.50, Class Counsel's request for $34,500.00, is reasonable, particularly as it does not account for time that will be incurred by Class Counsel in ensuring that the settlement is implemented according to its terms, and responding to additional inquiries from members of a large Class. Accordingly, Class Counsel believes the amount requested is reasonable and requests approval of this amount by the Court.

## V. **CONCLUSION**

For all the reasons set forth above, Plaintiff individually, and as representative of the Class of similarly situated persons, by Class Counsel, request that this Honorable Court grant final approval of the Agreement and enter the parties' proposed final approval order (a draft of which is attached as Exhibit G).

    Respectfully submitted,

    s/Catherine A. Ceko
    Catherine A. Ceko

Daniel A. Edelman
Cathleen M. Combs
Catherine A. Ceko
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 South LaSalle Street, Suite 1800
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

**CERTIFICATE OF SERVICE**

  I, Catherine A. Ceko, certify that on August 7, 2014 I caused a true and correct copy of the foregoing document via the CM/ECF system, which sent electronic notice of this filing to the parties named below:


Jon E. Brightmire
Doerner, Saunders, Daniel & Anderson, LLP
Two West Second Street
Tulsa, OK 74103


John P. Falcone
David A. Cheek
Cheek & Falcone, PLLC
6301 Waterford Blvd., Suite 320
Oklahoma City, OK 73118


                     s/Catherine A. Ceko
                     Catherine A. Ceko


Daniel A. Edelman
Cathleen M. Combs
Catherine A. Ceko
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 South LaSalle Street, Suite 1800
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)